FEDERAZIONE ITALIANA dei CON-
SORZI AGRARI et al., Libelants-
Appellees and Appellants,

v.

MANDASK COMPANIA de VAPORES,
S.A., Respondent-Appellant and
Appellee.

No. 272, Docket 29103.

United States Court of Appeals
Second Circuit.

Argued Jan. 5, 1965.

Decided March 3, 1965.

Rehearing Denied March 19, 1965.

Eugene F. Gilligan, Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for respondent-appellant and appellee.

Edward L. Smith, New York City, (Kirlin, Campbell & Keating, L. de Grove Potter, Kenneth C. Butterfield, New York City, of counsel), for libelants-appellees and appellants.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge:

The appeal and cross-appeal in this case arise from the sinking of the Steam Tanker Perama on March 18, 1957, in the Gulf of Mexico while on a voyage from Baton Rouge, Louisiana, to Italy. The libelants are the Italian society named, its president, and nineteen Italian underwriters. The society's cargo of soybean oil was lost with the Perama. The libelants contended that the sudden insurgence of water through the hull of the Perama and its sinking in calm waters about fifteen hours later were caused by the Perama's unseaworthy condition. In answer to the libel claiming $5,000,000 in damages, the respondent-shipowner made several affirmative defenses based on clauses of exception in the bill of lading and on the governing provisions of the Carriage of Goods by Sea Act (COGSA).[1]

Under Section 3(1) of COGSA[2] it is the duty of a carrier "to exercise due diligence to * * * [m]ake the ship seaworthy * * *." Section 4(1) states that "Whenever loss or damage has re-

---

1. 49 Stat. 1207 (1936), 46 U.S.C. §§ 1300–1315 (1958).

2. 49 Stat. 1208 (1936), 46 U.S.C. § 1303 (1) (1958):

"(1) The carrier shall be bound, before and at the beginning of the voyage, to exercise due diligence to—

"(a) Make the ship seaworthy;"

sulted from unseaworthiness, the burden of proving the exercise of due diligence shall be on the carrier  *  *  *."

In its pleadings the shipowner raised the affirmative defense of due diligence, as well as a defense based on the Fire Statute,[3] and the exception for fire in Section 4(2) (b) of COGSA[4] and these defenses were reflected in the pretrial order. The shipowner had the burden of proof with respect to these affirmative defenses. E. g., M. W. Zack Metal Co. v. S. S. Birmingham City, 311 F.2d 334, 337 (2d Cir. 1962), cert. denied, 375 U.S. 816, 84 S.Ct. 50, 11 L.Ed.2d 51 (1963) (citing cases); Gilmore and Black, The Law of Admiralty 162–63 (1957). See also The Southwark, 191 U.S. 1, 24 S.Ct. 1, 48 L.Ed. 65 (1903).

At the trial of this case the evidence presented on the issue of liability was mainly concerned with the respondent's effort to establish the exception of fire. Evidence as to unseaworthiness came into the case only indirectly, and respondent's offer of evidence on the issue of due diligence was rejected by the court. Moreover, in Judge Dawson's opinion there is no discussion of unseaworthiness or of respondent's defense of due diligence and nothing which could properly be considered a finding as to that defense.

In his discussion of limitation of liability Judge Dawson said:

"The loss of the cargo does not seem to have been a matter which was occasioned by a default of the owner or by a lack of care for which it may personally be charged."

It is difficult to explain how Judge Dawson could have reached this conclusion and yet held the owner liable for the loss, unless he adopted the erroneous view that the owner was, apart from the fire exception, an insurer of the ship's safety and unable to defend on the ground of due diligence. This latter suggestion as to the nature of Judge Dawson's error is supported by the fact that he struck from the interlocutory decree when it was presented to him for signature the statement that the cracking of the hull plating was "the result of the failure of the respondent to exercise due diligence, as carrier of said cargo, to make the vessel seaworthy."

It is possible that the evidence which was held sufficient on the issue of limitation of liability to support a finding that the loss of the cargo was not due to the default or lack of care of the owner was considered insufficient to support such a finding on the issue of liability. See Gilmore and Black, op. cit. supra at 696–97 and cases cited there. But such a conclusion would, under the circumstances of this case, require an express statement together with some discussion and explanation.

In any event these conjectures as to the reasons for the absence of vital findings cannot be made to do duty for the missing findings themselves.

It is clear that Judge Dawson, preoccupied with the issue of fire, overlooked the fact that due diligence was an available defense to the charge of unseaworthiness. Thus he committed the error of finding that there was liability on the owner for the loss of the cargo and, at the same time, that the owner was entitled to limitation of liability by reason of due diligence of a character which, it would appear, constituted a complete defense on the issue of liability.

We can perceive no way of correcting the errors and of resolving the inconsistencies except by remand for a new trial.

3. Rev.Stat. § 4282 (1875), 46 U.S.C. § 182 (1958):

"No owner of any vessel shall be liable to answer for or make good to any person any loss or damage, which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner."

4. 49 Stat. 1210 (1936), 46 U.S.C. § 1304 (2) (b) (1958):
"(2) Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—
*     *     *     *     *
"(b) Fire, unless caused by the actual fault or privity of the carrier  *  *  *."

Libelants also appeal from an order denying their application to compel the respondent to pay over the pending freights or post security. We affirm the district court's determination of this issue on the ground of libelants' delay of more than five years after filing of the answer in making their application.

Except as to this last issue, the orders of the district court are reversed and the case is remanded for a new trial.