Weston **GUIDRY**, Plaintiff-Appellant,

v.

**TEXACO, INC.,** et al., Defendants-Appellants, Cross-Appellees,

v.

**GULF COPPER & MANUFACTURING COMPANY,** Third-Party Defendant-Appellee, Cross-Appellant.

No. 28156.

United States Court of Appeals, Fifth Circuit.

Aug. 26, 1970.

Rehearing Denied and Rehearing En Banc Denied Oct. 9, 1970.

George E. Duncan, Beaumont, Tex. for Gulf Copper.

Strong, Pipkin, Nelson & Parker, Beaumont, Tex.; Louis V. Nelson, Beaumont, Tex., for Texaco Inc., appellant.

John N. Barnhart, Houston, Tex., for Guidry. Mandell & Wright, Houston, Tex., of counsel.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This is another in the expanding line of round-robin admiralty cases descended from *Sieracki,*[1] *Ryan*[2] and *Weyerhaeuser.*[3] Stated most simply, the facts are these: Guidry, an employee of Gulf Copper (and also at the moment a *Sieracki* seaman), was injured while working aboard Texaco's tanker the TEXACO NEW YORK. He sued Texaco on theories of unseaworthiness and negligence. Texaco denied liability and impleaded Gulf Copper, seeking indemnity for breach of the warranty of workmanlike performance under the authority of *Ryan.* Gulf Copper denied that Texaco was liable and by way of further defense alleged that Guidry and Balsano—another employee of Gulf Copper who was working with Guidry — were borrowed servants of Texaco; Gulf Copper also pleaded a defense under the *Weyerhaeuser* corollary. After a trial to the court, the court found: (1) Texaco was negligent, (2) the TEXACO NEW YORK was unseaworthy, (3) such negligence and unseaworthiness both proximately contributed to Guidry's injuries, (4) neither Guidry nor Balsano were borrowed servants of Texaco, (5) Gulf Copper breached its warranty of workmanlike performance, and (6) Gulf Copper was required to indemnify Texaco but was not liable to Texaco for attorneys' fees. Texaco and Gulf Copper both appeal severally from the findings adverse to them. Guidry takes no position on the indemnity, borrowed servant or attorneys' fees questions, but vigorously defends the finding of liability in his favor. We reverse as to Gulf Copper's liability for Texaco's attorneys' fees and affirm as to all else.

Guidry was injured when he and Balsano—both pipefitters—were removing a length of pipe from the cooling system of the TEXACO NEW YORK to facilitate cleaning a condenser. The vessel was then docked at Port Arthur, Texas for routine repairs and maintenance. Texaco frequently contracted with Gulf Copper for such parts of this work as came within their specialized line of work. Usually the relations between Texaco and Gulf Copper were informal

1. Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

2. Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

3. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958).

—i.e. no written contracts or detailed plans and specifications were drawn up: Texaco merely told Gulf Copper what it wanted done, and Gulf Copper did it and billed Texaco therefor. In the course of their dealings, matters outside the scope of the work for which Gulf Copper was originally hired would occasionally arise and on such occasions Texaco's representative on the scene would request Gulf Copper to do this additional work. Gulf Copper always performed the extra work and submitted an appropriate additional billing.

In the instant case, the removal of the pipe which caused the injury was in the category of additional work. On the second day that Gulf Copper was aboard the TEXACO NEW YORK, Texaco's representative Short asked Maxfield, an officer of Gulf Copper for two men to remove the pipe. Maxfield selected Guidry and Balsano. Short showed all three the pipe to be removed which Guidry and Balsano started to remove. Maxfield went about other business while Short stayed in the vicinity of the work done by Guidry and Balsano. Guidry and Balsano determined for themselves the method by which they would remove the pipe and the equipment they would need to do the job. The pipe was high above the floor plates of the ship's fireroom and was accessible only from a catwalk that ran beneath. The pipe was about seven feet long, weighed between 100 and 115 pounds, and its higher end was situated approximately six and a half feet above the catwalk. The course of its length contained several bends both laterally and vertically. Both pipe ends were flanged to permit interconnection with other piping by means of bolts and nuts. Guidry and Balsano determined that they each would remove all the bolts but one from the flanges at opposite ends of the pipe; then they planned to simultaneously remove the last bolts and manhandle the pipe down to the catwalk. They requested no assistance and no additional equipment to do the job.

Guidry and Balsano followed the method they had settled upon, but in order to reach his end of the pipe Balsano had to stand upon the catwalk's hand railing. When he removed the last bolt from his end of the pipe, the weight of the pipe was such that he was thrown off balance. Consequently, he dropped his end of the pipe causing Guidry to be thrown into a jackknife position which provoked his injury.

The district judge found the vessel unseaworthy and Texaco negligent. The pertinent findings of fact are as follows:

"20. I find the Defendants [sic] Texaco were negligent in (a) permitting the improper method of work, (b) failing to supply a safe place in which to work, (c) in supplying inadequate tools and equipment to do the job, (d) in supplying indequate personnel to do the work.

"21. I find the the SS TEXACO NEW YORK was unseaworthy to the task of the removal of the pipe in that the place of work was not reasonably suitable to the discharge of the task in safety, and the method for the discharge of the task was hazardous; and further that the tools and personnel were not reasonably adequate to the discharge of the task in safety."

Texaco and Gulf Copper both urged a defense of operational negligence and now complain that the district court made no findings on this defense. The failure to make such findings was not error for the district judge did not predicate his finding of unseaworthiness solely upon the negligence of Guidry and Balsano: To the contrary, in addition to finding the method improper he held the place, tools and personnel were not reasonably suitable to the job at hand. These findings of unseaworthiness based upon deficiencies entirely outside the operational negligence of the injured party or his co-worker effectively exclude this case from the ambit of the rule of Antoine v. Lake Charles Stevedores, Inc.,

376 F.2d 443 (5th Cir.1967), cert. denied 389 U.S. 869, 88 S.Ct. 145, 19 L.Ed.2d 146; *see also* Robinchaux v. Kerr McGee Oil Indus., Inc., 376 F.2d 447 (5th Cir. 1967); Grigsby v. Coastal Marine Service, 412 F.2d 1011 (5th Cir.1969).

■■ Texaco also complains on appeal that the district court did not make findings relating to its defense of contributory negligence which is based upon the same facts as the defense of operational negligence. The Appendix does not disclose that Texaco made any effort to have this omission filled by the district judge by a motion for additional findings. In any event, however, we do not think that such omission requires remand. The district judge did find that the men worked in the only place provided—or possible—for them to work; that no rigging or scaffolding was provided; and that the height of the pipe above his end of the catwalk made it necessary for Balsano to stand upon the handrails. These findings are sufficient for us to infer a negation of contributory negligence. While a strong case was certainly made for holding that Guidry's injury resulted solely from the joint negligence of Guidry and Balsano, we are not left with the definite and firm conviction that the findings of the district judge on the question of liability are mistaken; they are therefore sufficient to support his conclusions and the judgment. Furthermore, the failure of the district judge to specifically make all possible findings does not require remand where the omitted findings would not change the outcome of the cause. *See* Weber v. McKee, 215 F.2d 447 (5th Cir.1954); United States v. Jacobs, 308 F.2d 906 (5th Cir.1962); Stamicarbon, M.V. v. Escambia Chemical Corp., 430 F.2d 920 (5th Cir.1970) [No. 21596, 1970]. Finding no reversable error in the court's decision which holds Texaco liable to Guidry, we next reach the question of Texaco's right to be indemnified by Gulf Copper. Gulf Copper argues that indemnity is precluded by (1) the fact that Guidry and Balsano were borrowed servants not under the supervision of Gulf Copper at the time of the accident, and (2) Texaco's own conduct contributing to the injuries of Guidry.

The borrowed servant issue was considered by the district court and findings adverse to Gulf Copper were entered there. As a court of review we are required to look to the findings of the trier of fact—the district court—and ascertain if such findings are supported by the evidence. Rule 52(a), Fed.R.Civ.P. Here the district court found:

"18. * * * On many occasions while aboard the Texaco vessels, additional pipefitting work would come up, and the repair inspector aboard representing Texaco would advise Gulf Copper & Manufacturing Corporation's foreman of the additional job and point it out to him.

"19. That at no time was it understood by either plaintiff, Weston Guidry, or his coworker, Tony Balsano, that they were to be subject to the direction and control of Melvin Short of Texaso [sic], Inc. in removing the pipe. That neither of them understood that there was any change in their relationship with Texaco, Inc. and with Gulf Copper & Manufacturing Corporation from what it always had been when they were aboard Texaco ships. That the work of removing the pipe in question was being done by Gulf Copper & Manufacturing Corporation's employees under the same circumstances that they had always done pipefitting work on board Texaco vessels."

The district court then concluded:

"3. That the plaintiff, Weston Guidry, and his co-worker, Tony Balsano, were not loaned servants of Texaco, Inc. at the time of plaintiff's injury."

■ The findings recited above were made on disputed evidence given by live witnesses in the presence of the district judge. After reviewing the evidence, we are not able to say that these findings were clearly erroneous. We therefore affirm on the borrowed servant issue.

■ This brings us to the contention that Texaco's own conduct precludes recovery. Gulf Copper's position is based on the dictum in Weyerhaeuser S.S. Co. v. Nacirema Operating Co., Inc., *supra*, to the effect that a shipowner may recover indemnity against a stevedore company for breach of the warranty of workmanlike performance "absent conduct on its [the shipowner's] part sufficient to preclude recovery." *See also* Waterman S.S. Corp. v. David, 353 F.2d 660 (5th Cir.), cert. denied 384 U.S. 972, 86 S.Ct. 1863, 16 L.Ed.2d 683 (1966). There is no question here that Guidry and Balsano were asked to work in a dangerous position to do a dangerous job. But this does not constitute conduct on the part of Texaco sufficient to preclude recovery of indemnity against Gulf Copper. Admittedly the place, method, tools and personnel furnished to remove the pipe were not reasonably fit for the job, but Texaco had every right to look to Gulf Copper to know that they were proper and if not to take steps to see that they were made reasonably fit. The district court found that the only place to work was the catwalk, but such being the case Gulf Copper should have taken steps to make the catwalk a reasonably fit place to work. Since Gulf Copper did not do so, the ultimate responsibility must rest upon its shoulders under *Ryan, supra*. To the same effect is our holding in Grigsby v. Coastal Marine Service *supra*, wherein we said:

"The tank entry was done with the full knowledge of Coastal's representatives. Indeed, it was done to effectuate Coastal's work—the discharge by portable pump of the water accumulated in the wing tank. Obviously the tank was not safe for men at that time, either actually or under applicable safety regulations (* * *). Even though the tank was not meant to be safe for persons, once it became necessary to enter it, the service con-

tractor had the obligation not to perform its work in a way which would make the vessel unseaworthy, *i.e.*, unfit for men. * * * It was not reasonably fit for the presence of men because the contractor had failed and continued to fail to take those steps which were required to make it reasonably safe—i.e., test, ventilate or equip workers with the safety appliances needed (* * *)."

"To this extent, it was the action of the contractor which created the unseaworthy condition." 412 F.2d at 1031–1032.

We therefore affirm on the issue of indemnity.

■ Only the issue of attorneys' fees and expenses remains. Although the district court awarded Texaco indemnity from Gulf Copper for all amounts it was required to pay Guidry, it declined to award attorneys' fees and expenses. This we think was error. If Texaco was entitled to be indemnified by Gulf Copper, and we have held that it was, it was equally entitled to reimbursement for such reasonable attorneys' fees and expenses as it incurred in defending the claim asserted by Guidry in the trial and on this appeal. Lusich v. Bloomfield S. S. Co., 355 F.2d 770 (5th Cir.1966).

Affirmed in part, reversed in part, remanded for a determination of attorneys' fees and expenses.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is Denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.