432 F.2d 276
 Guy DRAKE, Plaintiff-Appellee-Cross Appellant,
v.
E. I. DuPONT deNEMOURS & CO., Inc., et al., Defendants-Third
Party Plaintiffs-Appellants-Cross Appellees, v.
LEVINGSTON SHIPBUILDING COMPANY, Third
Party Defendant-Appellee.
 No. 27496.
 United States Court of Appeals, Fifth Circuit.
 Oct. 2, 1970, Rehearing Denied and Rehearing En Banc Denied
Jan. 28, 1971.
 
 James E. Ross, Houston, Tex., for appellant-cross appellees.
 Sidney Ravkind, Houston, Tex., for Guy Drake.
 Arthur J. Mandell, Mandell & Wright, Houston, Tex., for appellee.
 Strong, Pipkin, Nelson & Parker, Louis V. Nelson, Beaumont, Tex., for Levingston Shipbuilding Company, third party defendant-appellees.
 Before WISDOM, SIMPSON and CLARK, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 On March 29, 1965, Guy Drake, an employee of Levingston Shipbuilding Company, sustained serious and permanent injuries as a result of inhaling toxic fumes while he was welding in a cylinder pressure tank aboard the barge CHEMICAL 101. Drake sued the owners and operators of the barge, Dixie Carriers, Inc. (Dixie) and E. I. DuPont de-Nemours & Co., Inc. (DuPont), respectively, in personam, and the barge CHEMICAL 101 in rem. The three defendants in turn filed a third-party complaint against Levingston Shipbuilding Company (Levingston) seeking indemnity from Levingston. This appeal by the three defendants follows a determination by the district court, sitting without a jury, that the vessel was unseaworthy and that the negligence of the defendants was the proximate cause of the injury to Drake, and a denial of the defendants' contention that they were entitled to indemnity from the third-party defendant Levingston. The district court granted judgment in the amount of $160,459.19. Drake also cross-appeals requesting additional amounts of damages which he claims were not granted in the award of the district court. Although we conclude that the district court was incorrect in predicating liability on unseaworthiness, we find no error in the determination of liability based on the defendants' negligence, in the denial of the defendants' request for indemnity, and in the award of damages. The erroneous conclusion as to lack of seaworthiness does not affect the vitality of the award for damages and we affirm.
 
 
 2
 The relevant facts are not in serious dispute. The barge, owned by Dixie and operated by DuPont, was being used actively and entirely to transport anhydrous ammonia. On March 10, 1965, the barge was delivered to Levingston for the joint account of Dixie and DuPont. Repairs in the nature of collision damage and those called for by annual inspection were for the account of Dixie, while charges for gas-freeing the interior of the pressure tanks and the inspection and repairing of cracks in the tanks, if any, were to be billed to the account of DuPont. The latter work was necessitated because the tanks, which were designed for a minimum temperature of 32 degrees Fahrenheit mistakenly had been loaded with anhydrous ammonia at 8 degrees Fahrenheit, and DuPont feared that the tanks had been damaged.
 
 
 3
 The cargo tanks were cleaned twice and inspected by magnaflux and x-ray tests conducted by Levingston, and cracks were found in the interior of the tanks. A gas-free certificate was issued on March 14, 1965. Several days elapsed while a repair procedure was established, and while Coast Guard approval of the method of repair was sought and approved. DuPont had previous experience in the repair of pressure tanks, and a DuPont chemist, Mr. Kobrin, prepared a detailed 'Repair Procedure' to be followed by Levingston employees in the process of welding the damage. These instructions called for the use of dye penetrant and other chemicals. It was in the process of carrying out these instructions that Drake was injured.
 
 
 4
 The logical inference is that the toxic fumes which injured Drake were created by the union of anhydrous ammonia residue in the tanks with the additional chemicals used and the heat emitted in the welding operation.
 
 
 5
 The defendants-appellants first assert that liability cannot be posited on unseaworthiness because the barge CHEMICAL 101 was not in navigation on the occasion in question, or alternatively, that Guy Drake was not engaged in work traditionally performed by seamen at the time he was injured.
 
 
 6
 That the barge was not in navigation seems hardly plausible. The barge had been involved in regular transport operations immediately prior to her delivery to Levingston, and the testimony indicates that all intentions were that she would return to the open waterways after the annual inspection and repairs. No substantial structural changes were planned or made on the vessel. The delivery to Levingston was merely for the purpose of keeping the barge in a state of repair suitable for continued navigation. The district court's finding that the barge was in navigation is abundantly supported by the evidence. See Bodden v. Coordinated Caribbean Transport, 5 Cir. 1966, 369 F.2d 273, discussing the variety of fact situations which have been treated by the courts.
 
 
 7
 The more difficult question is whether Drake, at the time of the injury, was one to whom the defendants owed a duty to keep the vessel seaworthy. We conclude that he was not such a person.
 
 
 8
 Seas Shipping Company, Incorporated v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), established that a duty of seaworthiness is owed not only to seamen who work in the ship's service under immediate hire of the owner, but also to those who, under other business relationships, do a seaman's work or incur a seaman's hazards. United New York and New Jersey Sandy Hook Pilots Association v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959), however, subsequently held that this extension of the duty of seaworthiness was not broad enough to cover those who were aboard a vessel in a shipyard to perform functions not traditionally performed by seamen. In Halecki the vessel was in the shipyard for an annual overhaul. One of the jobs to be performed was the overhaul of the ship's generators, which required that they be sprayed with carbon tetrachloride. Because of the toxic elements of carbon tetrachloride, the operation had to take place when no one other than the workmen were aboard the ship. The job required special equipment and workers with special knowledge. The work could not be performed at sea or by the average seaman. The work was so specialized that the repair yard engaged to overhaul the vessel did not have the proper facilities, but had to subcontract the work to another firm.
 
 
 9
 A discussion of the coverage of the doctrine of seaworthiness would not be complete without mention of West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959). West further refines the doctrine by holding that under certain conditions the shipowner may give to the contractor, shipyard, et cetera, such a degree of control over the vessel as to vitiate any liability for unseaworthiness. In West, however, the vessel had been in 'mothballs' for several years, and had been placed completely in the hands of a contractor for major overhaul work to render the vessel again operational.
 
 
 10
 We believe that Halecki controls the present situation. Drake had been a welder for Levingston for about twenty-six years. Although some welding is normally done at sea, the type of welding in question appears to have called for special knowledge and training. In fact, of the numerous welders employed in the Levingston yard, Drake was one of only two welders who were qualified to do this job. The type of welding involved was on the inside of the cargo tank, and called for the emptying of the tank and for the tank to be gas-free. It was established that the job in question called for a certified welder, and that certified welders were not available at sea but only in the shipyard. The Coast Guard in this instance required that the job be performed by a certified welder. The magnaflux and x-ray operations called for special equipment not generally available at sea. Under these circumstances we believe that as a matter of law it cannot be said that Drake was performing tasks which are traditionally performed by seamen; therefore, no duty to keep the vessel seaworthy was owed to him by the defendants. See McCown v. Humble Oil & Refining Company, 4 Cir. 1969, 405 F.2d 596, holding under somewhat similar facts that the injured worker was not one to whom a duty of seaworthiness was owed.
 
 
 11
 Since the district court found liability on the dual grounds of unseaworthiness and negligence, and since we agree that there is adequate evidence to support the district court's findings of fact and conclusions of law with regard to the issues of negligence, indemnity, and damages, our disagreement with the district court on the matter of unseaworthiness need not disturb the general award of damages.
 
 
 12
 There seems to be little doubt and no contest over the conclusion that the injury to Drake was ultimately caused by toxic fumes which resulted from the mixture of residue of anhydrous ammonia, other chemicals used in the welding process, and the resultant heat from the welding process. Who was legally at fault for this condition, if anyone, however, was hotly contested. At the trial the defendants introduced evidence generally to the effect that the proximate cause of the accident was the failure of Levingston to provide adequate ventilation in the tanks prior to and during the welding, that Levingston had not properly discharged its contract obligation to gas-free the tanks, and that Levingston did not provide Drake with proper safety equipment, including a gas mask. The third-party defendant, Levingston, on the other hand, countered with evidence that the proximate cause of the injury was the failure of DuPont, who prepared the 'Repair Procedure' and who is recognized widely (and without dispute here) as a national leader in the chemical industry, to warn Levingston of the possible hazards resulting from the combination of anhydrous ammonia with the other chemicals and heat. Levingston also offered evidence tending to negate any negligence in the cleaning of the cargo tanks and in the failure to supply certain ventilation and safety features. The resolution of such contradictory evidence was a matter for the finder of fact, and his findings cannot be set aside unless they are clearly erroneous. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); F.R.Civ. P. 52. There is ample evidence to sustain the findings of fact as well as the ultimate conclusions of negligence on the part of the defendants and the lack of entitlement to indemnity from the third-party defendants, and we so do.
 
 
 13
 Upon his cross-appeal, Drake complains that the district court improperly failed to award damages for (1) the cost of an attendant at the minimum of $100.00 per week, (2) weekly travel expense from Orange, Texas, to Beaumont, Texas, a round-trip distance of approximately fifty miles, and (3) loss of Drake's ability to keep up his house and yard. Great latitude is given the trial judge in awarding damages, and his judgment will not be set aside unless the award is clearly inadequate. Neal v. Saga Shipping Company, 5 Cir. 1969, 407 F.2d 481. Regarding the major item urged by Drake, compensation for an attendant, we note that the testimony indicated that Drake is primarily cared for by his wife, and other relatives live in close proximity. It therefore appears that little emphasis was made at the trial upon any need to employ a full-time attendant. Moreover, we believe that the first two items above are covered in the district court's award for 'future medical care, drugs, and hospitalization, including dental care * * * in the sum of $10,600.00'. With regard to the matter of household upkeep, although Mrs. Drake testified at the trial that Drake personally took care of the house and yard, no evidence was presented concerning the cost of any such upkeep. Thus any award for this item would have been speculative. We find no error in the award of damages.[1] The judgment is
 
 
 14
 Affirmed.
 
 
 15
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 PER CURIAM:
 
 16
 The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.
 
 
 
 [1]
 It is not necessary here that we remand the case for further itemization of damages by the district judge. Pritchett v. United States, 5 Cir. 1970, 425 F.2d 663. But see Neill v. Diamond M. Drilling Company, 5 Cir. 1970, 426 F.2d 487, noting that a remand for further findings may be necessary when an appellate court cannot adequately review the lump sum award in light of the objections raised as to the validity of the award