Salvatore **CORRAO**

v.

**M/V ACT III, her engines, etc., and Adrian Allard, her owner**

v.

**HANSEN CHRIS CRAFT SALES, INC.**
Civ. No. 72-1850.

United States District Court,
S. D. Florida.
June 4, 1973.

Walter C. Lehmann, Miami, Fla., for plaintiffs.

R. A. Ortmayer, Marlow, Mitzel & Ortmayer, Miami, Fla., for defendants.

Eleanor L. Schockett, Kates, Ress, Gomez & Rosenberg, North Miami, Fla., for third party defendant.

## MEMORANDUM OPINION

ATKINS, District Judge.

This admiralty proceeding poses more than the normal issue of credibility which almost every trier of fact must resolve. The disparity in the dates on which the claimed injury is said to have occurred is so entwined with the dissimilar manner in which the trauma is described by the plaintiff on the respective dates that a resolution of that one issue presages a disposition of this action.

The complaint alleged that plaintiff was injured on March 7, 1970 while attempting to lift or remove a reduction gear on board the M/V Act III. The gear gave way, he alleged, and in attempting to escape by the only route available to him, he slipped on the oily, greasy deck containing foreign particles. In his discovery deposition, taken on

February 28, 1973, he testified that March 17 was the accident date. At the trial, however, plaintiff swore that the injury for which he seeks recovery occurred May 5, 1970 when he slipped on oil in the bilge of the engine compartment while guiding a reduction gear to the deck as that gear was being lifted by an A-frame, a chain fall apparatus.

Plaintiff made a workmen's compensation claim, the first report of which recited that the injury to his back resulted from lifting an "engine part on March 17, 1970." An employer's report recites absences on March 20, 23 and 30, and May 8 and 11, 1970. That claim was settled for the lump sum of $3500 (in addition to benefits previously paid) on June 22, 1972 apparently because it was discovered that plaintiff had falsely represented his prior physical condition in failing to disclose, when he applied for employment with third party defendant Hansen Chris Craft Sales, Inc., that he had sustained a ruptured intervertebral disc at L–5 in 1966. He underwent surgery to repair this injury in May of 1967 at the Maine Medical Center.

Almost as if to compound this confusion, plaintiff himself never told any of the doctors he consulted that he was injured on May 5, 1970 when he says he slipped on oil. All histories given by him refer to an injury in March 1970 while lifting a gear. These credibility issues can only be resolved by reliance on the work record of the plaintiff's employer. That source contains one record which is believable. I refer to the worksheet described as "recap of Daily Job Cost Time Tickets," TPP Ex. 1, made and maintained as a business record by the third party defendant Hansen, evidencing work done by specific employees, for named customers on described boats. This exhibit discloses that under work order 1367, "SC" (Salvatore Corrao) removed and installed a #1 (reduction) gear on May 5 and 6, involving a total of sixteen hours of work, and then returned on May 7 to test-run the vessel, as the plaintiff testified. Accordingly, I find that the plaintiff's testimony at trial as to the cause of his present discomfort is credible and that he was injured on May 5, 1970 when he slipped on oil or grease upon the deck or bilge of the engine room where he was working while guiding the removal of the reduction gear.

At the time of his injury, which occurred while the Act III was on navigable waters, plaintiff was engaged in maritime work traditionally done by seamen. I find that he is entitled to the protection of the warranty of seaworthiness. This conclusion is supported by an extensive line of cases following Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), in which the Supreme Court held that a carpenter on board a ship to repair its grain loading equipment could recover for breach of the warranty of seaworthiness.

> [Plaintiff's] need for protection from unseaworthiness was neither more nor less than that of the stevedores then working with him on the ship or of seamen who had been or were about to go on a voyage. All were subjected to the same danger. All were entitled to like treatment under law. *Id.* at 413, 74 S.Ct. at 207.

Even more persuasive is the holding in Rogers v. United States, 452 F.2d 1149 (5th Cir. 1971), that a shipyard pipefitter installing a sea chest and piping and refittings was doing the type of work traditionally performed by seamen. In that case the accumulation of oil and water in the bilge from machinery was found to create an unseaworthy condition. As the Court noted:

> We agree with the district court that a bilge normally collects some water and oil, but once it becomes necessary for men to stand and work in it, its purpose and function is modified. In this instance the condition was not reasonably suited for men to work in, and the ship was unseaworthy. *Id.* at 1154.

There is another line of cases emanating from Halecki v. United N. Y. & N. J. Sandy Hook Pilots Assoc., 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959), in

which an electrician who was spraying the generators of a ship in the yard for an annual overhaul was held to be engaged in work not traditionally done by seamen. One of the most recent Fifth Circuit cases relying on *Halecki* is Drake v. E. I. DuPont deNemours & Co., 432 F.2d 276 (5th Cir. 1970). In holding that a welder injured from inhaling toxic fumes while working on the cylinder pressure tank of a barge was not one to whom the defendant owed a duty to furnish a seaworthy vessel, the court observed that the work in question "could not be performed at sea or by the average seaman. The work was so specialized that the repair yard engaged to overhaul the vessel did not have the proper facilities, but had to subcontract the work to another firm." *Id.* at 278. "Although some welding is normally done at sea, the type of welding in question appears to have called for special knowledge and training." *Id.* This doctrine is inapplicable to this case, where repair of a reduction gear like that aboard the Act III could be made aboard a vessel and had, in fact, been made by the plaintiff while at sea on other vessels.

■■ For these reasons, I find that the plaintiff was owed the warranty of seaworthiness, and that the defendant Allard breached his duty of providing the plaintiff a safe place in which to work, as required by Rogers v. United States, *supra*. I also conclude that the defendant Allard is liable on the general maritime law negligence theory in that he was admittedly aware of the dangerous condition existing in the bilge and failed to take reasonable precautions to provide a safe place in which those who came aboard might work. The bilge had not been emptied with a hand pump as was Allard's usual practice. He was aware of some oil underneath the reduction gear. Under the circumstances, the defendant must be charged with a failure to exercise reasonable care which proximately caused plaintiff's injury. *See, e. g.*, Vessella v. United States, 405 F.2d 599 (4th Cir. 1969), holding that a shipowner who delivers his vessel to a

shipyard may be found negligent if he fails "to exercise due care to provide a reasonably safe place to work for those who come aboard to service the vessel."

The most serious obstacle to plaintiff's recovery is the doctrine of Patterson v. Humble Oil and Refining Co., 423 F.2d 883, 886 (5th Cir. 1970), cert. denied, 401 U.S. 922, 91 S.Ct. 863, 27 L.Ed.2d 826 (1971), that:

> the owner's warranty of seaworthiness does not extend to non-crew members regarding transitory conditions *created by an outside repair crew* during the course of substantial repairs to an existing unseaworthy condition when the transitory condition relates to the subject matter of the repair contract. (emphasis added).

In so stating the applicable principle the appellate court narrowed the holding of the trial court that "no warranty of seaworthiness extended to Patterson regarding the condition in question because his injury was caused by the very defect he had come on board to repair." *Id.* at 885.

As applied to the facts of this case, plaintiff is entitled to recover if the limitation on the seaworthiness doctrine is as stated by the Fifth Circuit in *Patterson*. The dangerous condition, the oil in the bilge which had leaked from the faulty reduction gear, was already present when plaintiff came aboard to repair the gear. No more than a "shot-glass full" of oil remained in the crankcase when plaintiff disassembled the gear. The condition was not, as in Vessella v. United States, *supra*, created by the work of the repair crew. It was pre-existing, directly related to, and caused by, the existing defect in the gear.

■ The defendant, however, insists upon the broader argument that the plaintiff cannot recover because he was injured by a condition attributable to the defect which he was called to repair. Although the argument has a superficial appeal, it was properly restricted in *Patterson*. There is no assumption of risk bar in admiralty, where the comparative negligence doctrine ap-

plies. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939); Rivera v. Rederi A/B Nordstjernan, 456 F.2d 970, 973 (1st Cir.), cert. denied, 409 U.S. 876, 93 S.Ct. 124, 34 L.Ed.2d 128 (1972); Imperial Oil, Ltd. v. Drlik, 234 F.2d 4 (6th Cir.), cert. denied, 352 U.S. 941, 77 S.Ct. 261, 1 L. Ed.2d 236 (1956). Thus the fact that plaintiff was aware of the danger posed by the oil in the bilge, since he was employed to correct the leak which created that unseaworthy condition, relates only to reduction of his recovery. Recovery is not ipso facto precluded because he chose to work in the bilge at a time when defendant's failure to use reasonable care to make the area safe for workmen exposed him to possible danger. The *Patterson* doctrine is a common sense doctrine, which can be restated as follows: The owner owes a duty to use reasonable care to make the vessel safe for shore-based repair workers. He cannot, however, be held liable for damages resulting from a transitory condition created by the repair crew even if the condition so created renders the vessel unseaworthy. Liability may be imposed where the unseaworthy condition preceded the repairman's labors and was not caused by such labors, provided that the owner could have, by exercise of reasonable care, made the area a safe place in which to effect the repairs.[1] The condition which injured plaintiff Corrao was not transitory and, as in Rogers v. United States, *supra,* was not created by the repair work. *Patterson* therefore does not bar plaintiff's recovery.

■ It is necessary to determine the extent to which plaintiff's contributory negligence reduces his recovery. Plaintiff was clearly aware of the conditions in which he was to work. He, along with Adrian Allard, the owner, inspect-ed it the previous day. Plaintiff ordered and Mr. Allard was charged with the cost of a can of Ajax for the purpose of cleaning up the area. Corrao wore special nonslip shoes. He stated that oil from the cylinders had been spilled on the hatches, the sides of the engine room and in and around the engine. He says that he commented to Allard the day before, when they looked into the bilge, "This is a mess." Nevertheless Corrao chose to work in the oil-fouled bilge rather than clean it, when no one else appeared to clean it as he had anticipated. In so doing, plaintiff was 75% negligent himself. His recovery will be reduced accordingly.

■■ The defendant has in his answer indicated a desire to limit his liability pursuant to 46 U.S.C. § 183. Limitation can be sought by a former owner. Petition of Zebroid Trawling Corp., 428 F.2d 226 (1st Cir. 1970). It may also be pleaded in defense rather than raised by a statutory petition for limitation. In the former context, the security requirement does not apply. *See, e. g.,* Deep Sea Tankers v. The Long Branch, 258 F.2d 757 (2d Cir. 1958), cert. denied, 358 U.S. 933, 79 S.Ct. 316, 3 L.Ed.2d 305 (1959); Federazione Italiana Dei Consorzi Agrari v. Mandask Compania De Vapores, S. A., 223 F.Supp. 206 (S.D. N.Y.1963), rev'd on other grounds, 342 F.2d 215 (2d Cir. 1965); Blunk v. Wilson Line of Washington, Inc., 341 F. Supp. 1345 (N.D.Ohio 1972).

■ The owner seeking to limit does, however, bear the burden, as defined by Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943), of showing his lack of privity or knowledge of the unseaworthy condition. Mr. Allard has not carried that burden; indeed, the uncontradicted evidence establishes his knowledge of the condition.

[1.] A hypothetical situation illustrates the operation of this doctrine. An electrician on board a vessel to repair faulty ignition wiring, assuming arguendo that, despite *Halecki* and *Vessella, supra,* he was entitled to the warranty of seaworthiness, would not recover for injuries suffered from an electrical shock simply on the theory that the faulty wiring rendered the vessel unseaworthy. If, however, the shock occurred because he was required to work in a puddle of water which the owner had failed to remove, recovery would be possible, provided that the puddle was not created by his repair work.

For this reason, as well as his failure to establish the value of the vessel by competent evidence, limitation is not available.

Defendants have filed a third party complaint for indemnity against plaintiff's employer, Hansen Chris Craft Sales, Inc. Preliminarily, the court has determined that the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. do not apply retroactively to bar this third party action. Similarly, neither plaintiff's acceptance of Florida Workmen's Compensation benefits nor the availability of Longshoremen's and Harbor Workers' Compensation Act benefits bars the third party claim against the employer. Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Hagans v. Ellerman & Bucknall Steamship Co., 318 F.2d 563, 580–583 (3rd Cir. 1963). I find no basis for the third party complaint to the extent that it asserts breach of an implied warranty of fitness for a particular purpose. The following discussion relates only to the claim for breach of a warranty of workmanlike performance.

In the years since the Supreme Court in Ryan, supra, imposed liability upon a stevedoring company for breach of its contract to stow cargo in a workmanlike manner, the so-called warranty of workmanlike performance has covered new ground like a surging, storm-swept sea. As evidenced by the case of Guidry v. Texaco, Inc., 430 F.2d 781 (5th Cir. 1970), the warranty extends to contracts for repair work. In one suit based upon breach of warranty of workmanlike performance, it was held that "whether a hazard is created by the negligence of the shipowner or otherwise, the stevedoring firm is liable for indemnity if a workmanlike performance would have eliminated the risk of injury." Desiano v. Norddeutscher Lloyd, 301 F.Supp. 241, 244 (S.D.N.Y.1969) (indemnity allowed against employer in unseaworthiness and negligence action by marine carpenter).

The Fifth Circuit has consistently applied the teachings of Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). Under the "Weyerhaeuser Corollary" a shipowner may not recover indemnity from the plaintiff's employer in certain situations. Accord, Guidry v. Texaco, Inc., supra. In his opinion in Atlantic & Gulf Stevedores, Inc. v. Skibs A/S Danmotor, 342 F.Supp. 837, 845 (S.D.Tex.1971), Judge Noel examines in detail the principle that "fault on the part of the ship may be sufficiently egregious to suspend its right-over against the stevedore." He concludes that liability should, after balancing the shipowner's culpability against the employer's breach of warranty, "fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury." Id. at 846 (quoting Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 324, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964)).

Applying those workable tests, in light of Guidry, supra, it is clear that Mr. Allard's conduct was not sufficiently egregious to preclude indemnity. In Guidry, the defendant was found to be negligent in permitting plaintiff, a pipefitter, to work improperly in an unsafe place with inadequate tools and inadequate assistance. The Court held that indemnity could be asserted, despite the owner's negligence, because the owner could look to the contractor to assure that the premises were fit for work "and if not to take steps to see that they were made reasonably fit." Guidry v. Texaco, Inc., supra, 430 F.2d at 785. As in Guidry, the plaintiff Corrao had only one place in which to work, the bilge, and Hansen Chris Craft failed to take appropriate steps to make that bilge a reasonably fit place to work. This failure, I find, consisted only of the failure to pump and clean the bilge, and not of any alleged failure to provide adequate assistance. It must, for that reason, in-

demnify the defendants for the damages which plaintiff recovers.

■ The fact that plaintiff was injured on May 5, 1970 puts the damage aspect in understandable context. Corrao began life with a congenital defect—a narrowing of the spinal canal. This, apparently, made him more vulnerable to injury. A Maine back injury in 1966 revealed this condition.

Following his May 5, 1970 injury aboard the Act III, plaintiff required two operations, the first being a laminectomy, the second, the surgery for the removal of a nerve which had become entrapped during the first procedure.

Plaintiff spent more than two months in the hospital. Except for occasional jobs aggregating productive income of no more than $500 each year, Corrao, who is 39 years of age, has not worked since the May, 1970 accident.

Dr. Irving P. Eney, an eminent orthopedist, found plaintiff to have a substantial permanent disability. He assigned 15% of this disability to the injury of May 5, 1970. By a laminectomy with a spinal fusion, which Dr. Eney recommends, the 1970 related disability can be reduced to 10% and plaintiff will then be physically able to perform the marine work for which he is amply trained and experienced.

I summarize plaintiff's damages as follows:

| | |
|---|---|
| Loss of weekly average earnings of $225 from May 7, 1970 to June 4, 1973 (less $1500 of other income) (I find plaintiff's claim for unreported tips of $50 per week not to be credible). | $34,500.00 |
| Future loss of earnings: [2] | |
| (a) from June 4, 1973 to August 6, 1973 during which time the needed operation can be performed and recovery accomplished; and | 2,005.00 |
| (b) from August 7, 1973 for the period of plaintiff's work-life expectancy | 2,500.00 |
| (All past medical expenses were paid as part of the workmen's compensation benefits). | |
| Laminectomy and spinal fusion | 1,300.00 |
| Past pain and suffering | 3,000.00 |
| Future pain and suffering | 5,000.00 |
| | $48,305.00 |
| (I find plaintiff is enduring periodic pain in the lower back which would be substantially reduced by a laminectomy with spinal fusion and would become nondisabling). | |
| Reduced by plaintiff's comparative negligence of 75% | $12,076.25 |

---

■ The defendant Aetna as the Workmen's Compensation carrier is entitled to a lien (notice of which was filed on March 28, 1973), upon the recovery of the plaintiff, in the amount of $3500 plus wage benefits paid, for the sum previously paid him.[3] F.S.A. § 440.39(3). *See, e. g.,* Whisenant v. Brewster-Bartle

2. Reduced to their present value.

3. Plaintiff testified that the only injury he sustained on March 17 was slight as he recovered the next day. In explaining his workmen's compensation claim, he urged that it was based upon the same May 5 injury for which he seeks recovery in this proceeding.

Co., 446 F.2d 394 (5th Cir. 1971). This memorandum opinion contains the Court's findings and conclusions pursuant to Rule 52(a), F.R.Civ.P.

Counsel for the parties shall confer and submit, within five (5) days, an appropriate judgment for the plaintiff in the amount of $12,076.25 plus costs to be hereinafter taxed by the Clerk of the Court, with judgment for the third party plaintiffs against the third party defendant for the total amount recovered by the plaintiff plus third party plaintiffs' costs and attorneys' fees. Such fees, if not agreed upon, shall be determined upon an affidavit, to be served within ten (10) days, delineating specific work done and itemized charges for such work. The third party plaintiffs shall have five (5) days to file any affidavits in opposition. Defendant Aetna is awarded a lien, to be noted in the judgment, upon plaintiff's recovery as noted above.