In the Matter of the Complaint of Breton Island Company, Inc., a corporation, for its interest in and to the vessel, F/V STANFORD MORSE, for Exoneration from and Limitation of Liability, Plaintiff.

**BRETON ISLAND COMPANY, INC., Third-Party Plaintiff,**

v.

**KENNEDY MARINE ENGINE COMPANY, INC., Third-Party Defendant.**

Civ. A. No. S74–117.

United States District Court, S. D. Mississippi, Biloxi Division.

Jan. 21, 1976.

Norman E. Waldrop, Jr., Mobile, Ala., Roy C. Williams, Pascagoula, Miss., of counsel, for Breton Island Co.

Jerry O. Terry, Gulfport, Miss., for Kennedy Marine.

DANIEL HOLCOMBE THOMAS, District Judge.

The above-styled cause was heard by the Court without a jury and taken under submission on the 30th day of September 1975. After hearing the evidence, examining the exhibits, the pleadings, the stipulations and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. This action was brought by the plaintiff and third-party plaintiff, Breton Island Company, Inc., (Breton Island) against the third-party defendant, Kennedy Marine Engine Company, Inc., (Kennedy Marine) seeking indemnity for the settlement funds, costs and attorneys' fees incurred by Breton Island in

defending a claim initiated by Zane E. Wilkinson, Sr. (Wilkinson), an employee of Kennedy Marine, who sustained back injuries while repairing a V–12 diesel engine aboard the vessel F/V STANFORD MORSE.

2. Breton Island, is and was, at all material times, a corporation organized and existing under and by virtue of the laws of the State of Mississippi, with its principal place of business being located in Bayou La Batre, Alabama, and was and still is the owner of the vessel F/V STANFORD MORSE (STANFORD MORSE).

3. Kennedy Marine, is and was, at all material times, a corporation organized and existing under an by virtue of the laws of the State of Mississippi.

4. As a result of his injuries, Wilkinson filed suit on February 22, 1974, in the Circuit Court of Jackson County, Mississippi, against Breton Island alleging, among other things, that the vessel was unseaworthy and that the shipowner was negligent in not furnishing the claimant with a safe place to work. However, before any further proceedings could be undertaken in state court, Breton Island filed in this Court a petition for exoneration and limitation of liability thereby enjoining the state court litigation. Breton Island also filed a third-party complaint against Kennedy Marine on August 15, 1974.

5. Subsequently, Wilkinson filed a motion to vacate the injunction to permit him to litigate his original claim in the state circuit court before a jury. Said motion was granted by the Court and Wilkinson's claim was remanded to state court for trial and on July 28, 1975, a judgment was entered in favor of Wilkinson against Breton Island in the sum of $21,500.00. (Pl. Ex. 5)[1] Having settled its claim with Wilkinson, (Pl. Ex. 4, 9) Breton Island's third-party claim is before the Court.

6. It is stipulated by the parties that the amount of damages received by Wilkinson in his settlement with Breton Island was fair and reasonable compensation for Wilkinson's injury. Although the amount of damages are not challenged by the defendant, Kennedy Marine asserts that the settlement, by way of agreed judgment, is challenged from a liability standpoint.

7. Kennedy Marine is a seller and repairer of diesel engines. Wilkinson, at the time of his injury, was an employee of Kennedy Marine serving in the capacity of a first class engine mechanic. Wilkinson, who had been employed by the defendant since 1964, worked primarily out of the defendant's office located in Pascagoula. Jesse Herron Kennedy (Herron Kennedy), since retired, was the vice president of the Kennedy companies and in September of 1972, was the operating manager of the Pascagoula office.

8. On or about September 13, 1972, Herron Kennedy contracted with the plaintiffs to repair the engine of the STANFORD MORSE. As stated previously, the vessel was owned by Breton Island, and at this particular time, William P. Kennedy, III (William Kennedy) was the principal owner of Breton Island. William Kennedy, since deceased, was the brother of Herron Kennedy, and at one time served as president of Kennedy Marine. However, on the date of the contractual agreement between Kennedy Marine and Breton Island, William Kennedy served in no managerial capacity and held no official position with the Kennedy companies. Herron Kennedy testified that the repair work to be performed on the STANFORD MORSE was strictly a business transaction, notwithstanding the fact that the repair work was to be done on his brother's vessel. (Pl. Ex. 1.)

9. It is undisputed that the contract entered into between Kennedy Marine and Breton Island contained no indemnification provisions. Admittedly, other than invoices for labor and materials, the

1. References preceded by "Pl. Ex." or "Def. Ex." are to the exhibits admitted into evidence during the trial on behalf of the third-party plaintiff or third-party defendant respectively.

remainder of the agreement, and all transactions between Herron Kennedy, William Kennedy and Wilkinson were verbal.

10. On September 13, 1972, the day prior to the accident, Wilkinson testified that he was told by his employer, Herron Kennedy, to proceed to Bayou La Batre, Alabama, to repair the V–12 engine of the STANFORD MORSE. There is conflicting testimony as to whether Wilkinson inquired about available help to repair the vessel's engine prior to inspecting the vessel on the afternoon of September 13, 1972. Moreover, there is dispute as to whether Wilkinson spoke to William Kennedy at the Pascagoula office. Wilkinson testified that William Kennedy informed Wilkinson that the "crew would provide assistance." Herron Kennedy testified that he did not recall whether he spoke with his brother at the office or by phone conversation; however, Herron Kennedy admits that his brother informed him that the "crew would furnish the necessary help." Based on the credible evidence presented at trial, the Court finds that Breton Island, through its owner, William Kennedy, made an oral agreement with Kennedy Marine to furnish assistance to Wilkinson in order to repair the vessel's engine.

11. On the afternoon of September 13, 1972, Wilkinson traveled to Bayou La Batre to perform an inspection check on the engine to determine what repairs were necessary. The evidence is clear that during Wilkinson's inspection that afternoon, the captain of the STANFORD MORSE, E. W. Taylor was present. The captain shifted the vessel from its mooring to Joe Moore's Seafood Dock and then secured the STANFORD MORSE so that Wilkinson could load his equipment. Wilkinson testified that during his conversation with the captain,

Taylor indicated that he would not furnish help, however, Wilkinson admitted that he did not receive a specific denial.

12. Subsequently, on the morning of September 14, 1972, Wilkinson stated that he phoned William Kennedy and informed him of the captain's reluctance to furnish assistance. Wilkinson further asserts that he was told by Kennedy that the crew would assist him, or if they did not, a Lazrous Johnson, who worked at Joe Moore's Seafood Dock would provide the necessary help with the engine. William Kennedy denied that he ever received a phone call from Wilkinson.[2] When Wilkinson arrived at Bayou La Batre he was informed by the vessel's captain that he would not furnish help to Wilkinson. After the captain left the vessel, Wilkinson spoke with Lazrous Johnson and Johnson informed Wilkinson that he could not be of any assistance since he was working on another vessel. Upon a review of the evidence, the Court is of the opinion that Breton Island, in not furnishing help to Wilkinson in the repair of the vessel's engine, breached its contractual obligation to Kennedy Marine.

13. Immediately thereafter, Wilkinson testified that he called the Kennedy Marine office in Pascagoula and spoke with a Loreita Kriss and informed her that he did not have a helper. The testimony in this case, in many respects, is quite conflicting. A few things, however, seem clear. Wilkinson proceeded to work on the engine at approximately 10:00 a. m. Wilkinson primarily spent several hours stripping the engine. The engine in question weighs approximately 400 pounds and when completely stripped has a weight of roughly 200 pounds. That afternoon at approximately 3:00 p. m., Wilkinson attempted to lift the engine head and while in the process of removing the engine head, a vessel

2. The deposition of William Kennedy (deceased) was taken on September 10, 1974, and at the trial the Court permitted the following to be read into the record deposition at 82:

Question "Now, I'll ask you if on the 14th, if whether or not you received a call from

Mr. Zane Wilkerson (sic)? Did he talk to you on the telephone?"
Answer "I can't recall but I don't think so."

passed the STANFORD MORSE in the bayou, throwing a wake which caused Wilkinson to lose his balance and go across the engine and injure his back on the ladder in the engine room. At the time that Wilkinson received his injuries he was alone on the vessel.

14. There was great dispute as to whether the job of lifting a V–12 engine requires two men. Breton Island asserts that it is a two man operation, whereas Kennedy Marine's theory is that the job can be safely performed by one man. When questioned by the Court if two men are generally sent out to remove an engine head of the size contained in the STANFORD MORSE, Herron Kennedy replied that as a matter of convenience two men are sent out on this type of a job assignment. However, Kennedy further stated that some mechanics prefer to work alone on a job of this nature and that the decision to hire a helper is left to the individual mechanic. The evidence is clear that Wilkinson wanted a helper to assist him in the repair of the engine. The Court further finds that Kennedy Marine knew that Wilkinson had experienced back trouble in the past (Pl. Ex. 2, 3.) and that due to his condition a helper should have been made available to Wilkinson to perform this work assignment. Wilkinson testified that he "thinks" that the removal of the engine head would have been without incident had the vessel not shifted due to the wake of a passing vessel. The Court is of the opinion that there is sufficient evidence to find that this accident would have been prevented had Wilkinson been assisted by a helper.

15. Finally, the plaintiff asserts that Wilkinson in removing the engine head by himself was a proximate cause of the accident. Moreover, Wilkinson knew that at the time of the accident that the vessel was subject to shifting. Wilkinson admitted that prior to the accident he asked Lazrous Johnson to install lifting beams (eyes) in the engine room to facilitate the use of a come-along in lifting the head of the engine. However,

the evidence shows that there were no lifting eyes in the engine room of the STANFORD MORSE at the time of Wilkinson's injury. In determining the cause of Wilkinson's injury, the plaintiff asserts that Wilkinson acted unreasonably in not stopping his work on the engine and waiting for help, or in the alternative, in not leaving the vessel altogether and returning to the home office to seek assistance in completing the job. The plaintiff further asserts that the economic pressure on Wilkinson to complete his job assignment and the continued economic dependence on Kennedy Marine for future employment are additional factors to be considered in determining whether there was a breach of the implied warranty of workmanlike performance on the part of Kennedy Marine through its agent Wilkinson. After a careful review of the evidence, the Court is unable to agree with the plaintiff's theory. Admittedly, there can be no doubt that Wilkinson had a duty to perform the repairs on the engine's vessel in a reasonably safe manner. Based on the evidence, the Court is of the opinion that Wilkinson, in performing his job assignment, did not breach his warranty of workmanlike performance and therefore, the Court finds that the plaintiffs are not entitled to indemnity from Kennedy Marine.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter based upon its admiralty and maritime jurisdiction. 28 U.S.C. § 1333.

2. The third-party plaintiff herein asserts that it is entitled to full indemnity against Kennedy Marine for breach of its warranty of workmanlike service. Plaintiffs' theory rests squarely on the longshoreman-shipowner-stevedore triangle, commonly referred to as *Ryan* indemnity. *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); *Seas Shipping Co., Inc. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed.

1099 (1946).[3] Clearly, the *Ryan* indemnity doctrine applies to ship repair contracts, and therefore, is applicable to plaintiffs' indemnity claim in the case at bar. *Guidry v. Texaco, Inc.,* 430 F.2d 781 (5th Cir. 1971); *Lusich v. Bloomfield Steamship Co.,* 355 F.2d 770 (5th Cir. 1966).

■ 3. It is well recognized that where the shipowner is entitled to be indemnified for breach of warranty of workmanlike performance the foreseeable damages include reasonable attorneys' fees and litigation expenses. *McCawley v. Ozeanosun Compania, Maritime, S. A.,* 505 F.2d 26, 32 (5th Cir. 1974).[4] A threshold issue to be determined in this case is whether Breton Island's conduct is sufficient to preclude its recovery from Kennedy Marine. It has been held in the Fifth Circuit that a shipowner will be denied recovery only where his conduct prevents the stevedore's workmanlike performance. *Waterman Steamship Corp. v. David,* 353 F.2d 660 (5th Cir. 1965), cert. denied, 384 U.S. 972, 86 S.Ct. 1863, 16 L.Ed.2d 683 (1966). When Breton Island failed to furnish assistance it breached its contractual duty to Kennedy Marine and the Court finds that this contractual breach is sufficient to deny recovery to the shipowner. *Weyerhauser S. S. v. Nacirema Co.,* 355 U.S. 563, 567, 78 S.Ct. 438, 441, 2 L.Ed.2d 491 (1958).

■ 4. In order to recover indemnity from Kennedy Marine, Breton Island must show that the defendant breached its implied warranty of workmanlike performance. The burden of proof is on the shipowner and the shipowner must establish the elements of its indemnity claim. *Garner v. Cities Services Tankers Corporation,* 456 F.2d 476 (5th Cir. 1972); *Waterman Steamship Corp. v. David, supra.* In *Garner,* the Fifth Circuit set forth the test:

"The determination of whether contractual indemnity should be allowed involves a weighing process evaluating the conduct of both parties to determine: (1) whether the warranty of workmanlike performance was breached, (2) whether that breach proximately caused the injury; and (3) whether the shipowner's conduct prevented the workmanlike performance. . . ." 456 F.2d at 481.

In applying this standard, the Court is of the opinion that Breton Island has failed to prove by a fair preponderance of the credible evidence that Kennedy Marine, through its servant, breached its warranty of workmanlike performance. (See Findings 14, 15.)

■ 5. Breton Island asserts that Kennedy Marine breached its warranty of workmanlike performance through Wilkinson's contributory negligence. As stated previously, the awarding of indemnity under the warranty of workmanlike performance consists of weighing the facts surrounding the accident. The contributory negligence of a workman is only one factor to be considered in evaluating whether there has been a breach of the implied warranty of workmanlike performance. *Johnson v. Warrior & Gulf Navigation Company,* 516 F.2d 73, 77 (5th Cir. 1975); *Julian v. Mitsui O. S. K. Lines, Ltd.,* 479 F.2d 432 (5th Cir. 1973), cert. denied, 414 U.S. 1093, 94 S.Ct. 725, 38 L.Ed.2d 551 (1973). Based on the evidence, the Court is of the opinion that Wilkinson performed his duties with reasonable safety and therefore, was not contributorily negligent in repairing the vessel's engine. Accordingly, the Court finds that Kennedy Marine did not breach its implied warranty of workmanlike performance and therefore, the plaintiffs are not entitled to indemnity against Kennedy Marine.

---

**3.** For an account of this frequently recurring admiralty triangle in the field of maritime law, see G. Gilmore and C. Black, Law of Admiralty §§ 358–374 (1957) and 1A Benedict on Admiralty § 119 (7th ed. 1973).

**4.** See *Guidry v. Texaco, Inc.,* 430 F.2d 781 (5th Cir. 1971); *Lusich v. Bloomfield Steamship Co.,* 355 F.2d 770 (5th Cir. 1966); See also, C. Bue, Admiralty Law in the Fifth Circuit: A Compendium for Practitioners. 4 Houston L.Rev. 347, 419–420 (1966).

826

A decree will be entered in accordance herewith.

## JUDGMENT

This cause having come on for a final hearing on the pleadings and proof and having been taken under submission, the Court after due deliberation having entered its Findings of Fact and Conclusions of Law, it is ORDERED, ADJUDGED and DECREED by the Court that the plaintiff and third-party plaintiff are not entitled to a judgment against the third-party defendant and the case is accordingly dismissed with the costs taxed to the plaintiffs.